# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MATTHEW G. INAN,<br><br>PLAINTIFF,<br><br>v.<br><br>E-NABLER CORPORATION; ABC INSURANCE COMPANY; JOHN DOE,<br><br>DEFENDANTS. | CIVIL NO.<br><br>BREACH OF CONTRACT AND DAMAGES, ARTICLES 1158 OF THE PUERTO RICO CIVIL CODE; PUERTO RICO LAW NO. 17 OF APRIL 17, 1931<br><br>JURY TRIAL REQUESTED |

## COMPLAINT

**TO THE HONORABLE COURT:**

Comes now plaintiff, MATTHEW G. INAN, through the undersigned attorneys, and very respectfully, states, alleges and prays as follows:

### JURISDICTION AND VENUE

1. This is a civil action for breach of contract, salaries and damages brought pursuant to Articles 1158 and 1536 of the Puerto Rico Civil Code, 31 LPRA §§ 9303, and Puerto Rico Law No. 17 of April 17, 1931.

2. This Court has jurisdiction over this matter pursuant to 28 USC § 1332.

3. This Honorable Court is vested with jurisdiction to entertain the instant cause of action based on the diversity statute, 28 USC § 1332 (a) (1), inasmuch complete diversity of citizenship exists between Plaintiff and Defendants, wherefore Plaintiff Matthew G. Inan is a resident of a state other than Puerto Rico, Defendants are residents of Puerto Rico, and an amount of no less than $75,000.00, exclusive of interest, attorney fees, and costs, is in controversy.

4. Venue is proper pursuant 28 USC § 1391 (b). This is the judicial district where the events or omissions giving rise to the claim occurred and, also, the judicial district in which the Defendants reside.

**PARTIES**

5. Matthew G. Inan, hereinafter "Mr. Inan" or "Plaintiff", is of legal age, single, and resident of 462 Southeast First Circle, Pompano Beach, Florida 33060. His telephone number is (305)-968-6472.

6. e-Nabler Corporation, hereinafter "e-Nabler", is a domestic, for-profit corporation organized under the laws of the Commonwealth of Puerto Rico with corporate number 115704. e-Nabler is an independent software vendor developing Point of Sales software, which offers mobile computing products. e-Nabler develops software that sits behind the point-of-sale device. e-Nabler is located at 252 Ponce de Leon Ave. Suite 602, San Juan, PR 00918, Puerto Rico. Its telephone number is (787)763-5959. Its mailing address is PMB 227 PO Box 7891, Guaynabo, PR 00970-7891. The resident agent of the Corporation is Joel Vázquez, who also appears to be the President and Secretary of the Corporation with address at 60011 Pino Street, Bosque Dorado, Dorado, PR 00646

7. Codefendant ABC Insurance Company is an entity organized and/or authorized to conduct business relating to insurance within the Commonwealth of Puerto Rico (hereinafter referred to as "Insurer") who during the period comprised by the charges in this complaint was providing applicable insurance coverage for anyone of Defendants. The name of the insurance company is unknown to the Plaintiff at the time but upon discovery will move the Court for the substitution of its identity.

8. John Doe is a natural person, or a corporation, authorized to do business in the Commonwealth of Puerto Rico, who at all relevant times was responsible for the acts alleged in the Complaint.

## THE FACTS

9. On March 23, 2012, Mr. Inan and e-Nabler, through its President and Chief Executive Officer Mr. Joel Vazquez ("the CEO") signed a two-year Advisory Services Agreement ("Agreement"), through which the Company engaged Mr. Inan as Director of Business Development to provide financial, consulting and business advisory services related to funding, financing and/or strategic partnership development. Mr. Inan was hired as an independent contractor.

10. Pursuant to the Agreement Mr. Inan was to receive $252,000.00 in monetary compensation and stock awards for the two years of work in total. Half of the monetary compensation paid to Mr. Inan on account of the services to be provided was allocated to the grant of stock awards. During the two-year term of the Agreement, Mr. Inan was to receive $126,000.00 in stock awards. The stock awards were valued under the Agreement at Four Dollars ($4.00) per share, thus he was entitled to receive Thirty-One Thousand Five Hundred Shares (31,500) in the two year term of engagement pursuant to the Agreement.

11. On March 23, 2014, Mr. Inan and e-Nabler, through its President and Chief Executive Officer (CEO) Mr. Joel Vazquez, signed another Advisory Services Agreement ("Second Agreement"), through which the Company continued to engage Mr. Inan to provide financial, consulting and business advisory services related to funding, financing and/or strategic partnership development. Mr. Inan was again hired as an independent contractor, providing services as the Company's Director of Business Development.

12. The term of the Second Agreement had a duration of two (2) years and nine (9) months, beginning on March 23, 2014, and ending on December 22nd of 2016.

13. As part of his duties, Mr. Inan had to carry out a critical assessment of the Company's funding efforts to help establish and increase credibility and acceptance with potential investors and clients; review and provide criticism the Company's existing strategic plan, alliances, and existing partner relationships, including a review of the Company's internal pre/post-sales infrastructure; advise and assist the Company in developing an action plan and content to execute presentations to potential strategic investors and potential clients; advise and assist the Company in presenting to Company pre-approved strategic investors, clients and/or regulatory bodies in efforts to broaden support for Company's business; and work on assignments requested from time to time by the Company.

14. e-Nabler agreed to pay Mr. Inan a fee equivalent to $11,000 per calendar month, in arrears, throughout the thirty-three (33) months of the Term of the Second Agreement. Additionally, an annual performance bonus of $8,000 upon accomplishment of the following goals: 2014-15 Goal – Obtaining financing of at least $250,000 for e-Nabler Corporation; 2015-16 Goal – Obtaining cash funds from sponsors for an amount equal to at least 80% of total production costs of EPEC 2016 show.

15. The Company agreed to pay Mr. Inan (i) $7,500 in a twice a month cash payment, in arrears; (ii) $3,500 in stock awards, in arrears per month; and (iii) $8,000 in performance bonus annually if achieved. During this two (2) year term, a $115,500.00 portion of his compensation was deferred for stock purchases.

16. Mr. Inan was thus entitled to receive $115,500 in stock awards during the term of his engagement.

17. Per the two (2) Advisory Services Agreement, upon Termination the Company was to pay Mr. Inan all amounts owed to date and Mr. Inan would have the option to his shares of the Company, and the Company would have the option to purchase Mr. Inan's shares at a value not less than the purchase price.

However, Mr. Joel Vazquez assured Mr. Inan that if he left the Company, he would be immediately paid his shares, as they both were in agreement that the stock awards were issued as a deferred compensation to Mr. Inan.

18. Mr. Inan accrued, during the two Advisory Services Agreement, a total of $241,500 in stock awards ($126,000 from the Agreement and $115,500 from the Second Agreement).

19. Even though the two (2) Agreements required the Company to issue those stock awards to Mr. Inan upon each anniversary date of the Agreement, the Company never issued the stock awards from the Second Agreement to Mr. Inan.

20. Although the term of the Second Agreement ended, Mr. Inan continued working full time for e-Nabler, without any further written agreement. In essence, e-Nabler adjusted the cash portion of the payments to Mr. Inan but did not offer any further stock awards to Mr. Inan thus resulting in the reduction of Mr. Inan's compensation package.

From the termination date of the Second Agreement to the date Mr. Inan was forced to leave the Company, Mr. Inan worked for e-Nabler with an expectation of work continuity.

21. In November of 2022, the CEO for e-Nabler agreed to increase the commissions to Mr. Inan. However, the CEO did not liquidate the increased commissions in the compensation package of Mr. Inan.

22. During the term of his employ, Mr. Inan became e-Nabler's only Sales Director. He changed the Company's sales model from direct to indirect, he recruited resellers, and was able to expand e-Nabler's business substantially.

23. Due to the Company's non-compliance with the agreed commissions, Mr. Inan started sending e-mail reminders to the CEO in the year 2023, reciting the increased commission changes Mr. Vazquez had verbally conveyed to Plaintiff in November of 2022.

24. The Company did not pay Mr. Inan any commission payments despite many verbal and e-mail reminders he made over the course of that year.

25. On October 6, 2023, Mr. Inan informed Mr. Vazquez that due to his failure to pay the agreed commissions, he would resign from the Company.

26. Mr. Inan decided to leave e-Nabler for various reasons:

   a. Mr. Vazquez did not liquidate any of Mr. Inan's sales commissions in almost a year from December of 2022 through September of 2023.

   b. In a conversation they held in November of 2022, Mr. Vazquez suggested that he would send Mr. Inan a written letter with Mr. Inan's revised compensation package that was to take effect as of December 1st of 2022. Mr. Vazquez did not do this despite many e-mail and verbal reminders. As such, Mr. Inan sent Mr. Vazquez an e-mail with his understanding of the revised compensation package to set a written record. Mr. Vazquez never addressed Plaintiff's notes regarding the specifics of his new compensation package. Part of the revision in Plaintiff's compensation was a slight increase in his fixed pay and Mr. Vazquez actually paid Mr. Inan the increase in his fixed pay but not the commissions agreed to.

    c.    Mr. Vazquez started asking Mr. Inan daily e-mail reports with what Plaintiff had done "by the hour" despite repeatedly telling him that he (Mr. Inan) enters all his activities (all his calls and e-mails with the Company's resellers and customers) with material updates into their corporate system called Zoho CRM, which is accessible to Mr. Vazquez. Furthermore, Plaintiff either e-mailed Mr. Vazquez specific project updates or copied him in his e-mails with customers so he was in the know. In summary, an e-mail hourly activity report was a rather demeaning request for a veteran executive like Mr. Inan but shows the control Mr. Vazquez exerted over his work and work schedule while also being economically abusive.

    d.    Mr. Vazquez kept arbitrarily deducting amounts on Mr. Inan's travel reimbursement reports without offering any explanation and, when he questioned him, Mr. Vazquez' explanations for the deductions were unreasonable. For example, he paid Plaintiff only half of the allowed (as per guidance provided by the Internal Revenue Service (IRS) mileage expense he reported having driven his car to company's tradeshows from his home in Fort Lauderdale to Orlando with a full load of e-Nabler's expo booth furniture and demo equipment he had in Plaintiff's storage.

    e.    Mr. Vazquez then hired another sales executive in San Juan who started quoting and selling (hardware or software) to customers Plaintiff had personally attended to and done business with, affecting the receipt of any further commissions and bonuses, in fact circumventing Mr. Inan's financial interest over those sales.

    f.    Mr. Vazquez kept asking Plaintiff to do things outside of his direct area of responsibility (and thereby taking time away from activities for which he could drive new income for the company and himself). For example, Plaintiff was asked to draft financial reconciliation spreadsheets with resellers and customers that can and should have been done by the Company's administrative department.

    g.    Mr. Vazquez never issued the shares Plaintiff paid for with his deferred income from March of 2014 through December of 2016.

    h.    At the time of their agreement around the subject of deferred income to purchase shares, Mr. Vazquez made a false verbal representation suggesting that $4 was the per share price established by the initial capital investment of Economic Development Bank of Puerto Rico ("EDB-PR") whereas Plaintiff later found out that the bank had paid $2.40 per share.

    i.    Even though Plaintiff worked for e-Nabler full-time for almost twelve (12) years, Mr. Vazquez simply refused to put Plaintiff on payroll thus depriving him of benefits such as healthcare coverage and retirement or Christmas bonuses or increased vacation time etc., that would otherwise be provided to the rest of their employees -which also resulted Plaintiff having to pay for taxes.

27.    The Company failed to pay Mr. Inan's sales commissions that were outstanding notwithstanding Mr. Inan's constant reminders to the Company requesting its payment. This debt is of approximately $25,000.00 in sales commissions agreed but not paid are detailed below.

28. Due to all these breaches in his employment contract, and changes in his duties and responsibilities, and in the absence of an affirmative action by the Company to satisfy Mr. Inan's outstanding financial concerns, Plaintiff gave the Company a final notice to pay him all amounts owed by the end of business day on October 20th, 2023, or he would be forced to leave the Company.

29. The Company did not pay Mr. Inan his accrued commissions, did no issue the stock certificates requested for the Second Agreement nor liquidated their value for the Agreement and the Second Agreement, as Mr. Joel Vazquez had assured Mr. Inan he would purchase those stocks upon his departure, forcing him to leave the company on October 20th, 2023, as previously announced on October 6th, 2023.

30. The Company did not reimburse Mr. Inan with the expenses incurred in the promotion of the company's sales and services, in the amount of $152.22.

31. Mr. Inan after giving notice of his future departure, worked for the Company dutifully two (2) full weeks after his conversation with its President and CEO on October 6, 2023, facilitating business continuity and an orderly handover process to the extent the Company availed resources for such handover. Mr. Inan was not paid any salary for the last week of work.

32. Based on the above, Mr. Inan legally claims that e-Nabler owes him:

   a. $115,500 in stock certificates, which, were his agreed deferred compensation, and upon termination of his engagement, the Company was able to purchase his shares at a value not less than the purchase price of them;

   b. The purchase price of all stock certificates and stock awards that Mr. Inan received or was entitled to receive, in the sum of $241,500.00.

    c.    $24,339.18.40 in sales commissions, including license sales, service, development, and equipment sales commissions, etc.

    d.    His fixed pay for the week of October 16-20, 2023, which would be 5/22 of his monthly salary of $8,500.00, as he worked five (5) of twenty-two (22) working days in the month of October for a total of $1,931.82.

    e.    $500.00 approximately in storage fees of Company's property and equipment which Mr. Inan has kept in storage upon request by the Company not to dispose of the property and equipment but failing to take steps to retrieve them from storage. This amount increases by each month a storage fee is accrued.

    f.    Interest accumulated on the outstanding debts from the date of nonpayment to the present and

    g.    Costs, fees, expenses and attorney's fees incurred in this litigation.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT PURSUANT TO ARTICLE 1158
## OF THE PUERTO RICO CIVIL CODE
## 31 LPRA § 9303

**A. Claim for Stock Awards and payment**

33.    Plaintiff repeats, reiterates and re-alleges each and every allegation previously contained in this Complaint.

34.    Article 1158 of Puerto Rico Civil Code of 2020 states that the person who in any way contravenes the tenor of his obligation must compensate the damages and losses caused.

35.    Article 1158 of the Puerto Rico Civil Code mandates compensation by any party that contravenes their contractual obligations, to the aggrieved party for damages incurred. P.R. Laws tit. 31 § 9303.

36. As a direct result of Defendants' breach of contract in failing to pay Mr. Inan's commissions and issue the stock awards for the second Agreement and liquidating all his shares, Plaintiff has suffered damages and is entitled to compensation.

37. As agreed between the parties, upon Termination of the Services Agreement the Company was to pay Mr. Inan all amounts owed to date and Mr. Inan would have the option to his shares of the Company, and the Company will have the option to purchase Mr. Inan's shares at a value not less than the purchase price.

38. Mr. Inan is entitled to the liquidation of the shares of Company stock valued at an amount of no less than $126,000.00 pursuant to the Agreement plus interest from the termination of the Advisory Services Agreement on March of 2014 to the date of payment.

39. Mr. Inan is also entitled to the receipt of the shares of Company stock valued at $115,500.00 or the receipt of an amount not less than $115,000 from the Company plus interest from the termination of the Second Advisory Services Agreement on December 22, 2016, to the date of payment.

40. Plaintiff seeks damages in an amount no less than $100,000.00, representing the financial and emotional impact of the Company's intentional and willful breach of its obligations under the Agreements and under other work obligations by failing to provide him the agreed deferred compensation upon the termination of the Second Agreement, and the damages and mental anguish suffered for such breaches, including the economic abuse he has suffered.

41. Plaintiff is also entitled to reasonable attorney's fees, interest and cost and expenses in this litigation.

**B. Claim for outstanding unpaid commissions**

42. Plaintiff repeats, reiterates and re-alleges each and every allegation previously contained in this Complaint.

43. The Company owes Mr. Inan the commissions he earned but were not paid while working for the Company, which amount to $24,049.18.

44. The Company owes Mr. Inan interest accrued on this debt.

45. Plaintiff is also entitled to reasonable attorney's fees, interest and cost and expenses in this litigation.

**C. Claim for unpaid wages**

46. Plaintiff repeats, reiterates and re-alleges each and every allegation previously contained in this Complaint.

47. The Company owes Mr. Inan the wages he accrued for one week during the month of October, which were never paid to him.

48. The unpaid salary is in the amount of $1,931.82.

49. The Company owes Mr. Inan interest accrued on this debt.

50. Plaintiff is also entitled to reasonable attorney's fees, interest and cost and expenses in this litigation.

**D. Claim for unreimbursed expenses**

51. Plaintiff repeats, reiterates and re-alleges each and every allegation previously contained in this Complaint.

52. The Company owes Mr. Inan the expenses he has incurred by maintaining in his custody property and equipment of the Company, which the Company has advised him not to dispose of, but at the same time has not taken steps to retrieve, in the approximate amount of

$500.00. This amount increases from month to month, as more storage fees accrue by the mere passing of time.

53. The Company owes Mr. Inan interest accrued on this debt from the time of its nonpayment.

54. Plaintiff is also entitled to reasonable attorney's fees, interest and cost and expenses in this litigation.

## IV. DEMAND FOR JURY TRIAL

55. Plaintiff repeats and incorporates each and every preceding allegation as is fully set herein.

56. Plaintiff hereby demands that all of his causes of action be tried before a Jury.

## V. PRAYER

Wherefore, premises considered, Plaintiff demands judgment against Defendants for compensatory damages and all damages claimed herein in an amount of no less than $368,000.00 exclusive of interest, legal fees and costs, and grant Plaintiff such other relief as is warranted under the circumstances. Plaintiff further demands trial by jury on all issues.

In San Juan, Puerto Rico, this 18th day of September of 2024.

**MANUEL PORRO-VIZCARRA**
**LAW OFFICES**
Ave. Escorial 382
Urb. Caparra Heights
San Juan, P.R. 00920

Telephone 787-774-8200
Facsimile 787-774-8297


/S/Manuel Porro-Vizcarra
USDC # 207006
mpv@mpvlawpr.com

13

/S/Myrmarie Laborde Vega
USDC # 226107
ml@mpvlawpr.com