**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**MATTHEW G. INAN,**

**Plaintiff**

**v.**

**E-NABLER CORPORATION; ET AL.,**

**Defendants.**

**Civil No. 24-01434 (ADC)**

## MEMORANDUM AND ORDER

### I. Factual and Procedural Background

On September 18, 2024, Matthew G. Inan ("plaintiff") filed a complaint under this Court's diversity jurisdiction for breach of contract, "salaries and damages" pursuant to several Puerto Rico statutes. **ECF No. 1** at 1-2. According to the complaint, plaintiff agreed to provide E-Nabler Corporation ("defendant") "financial, consulting and business advisory services related to funding, financing and/or strategic partnership development" as an independent contractor. *Id*., at 3. On March 14, 2014, the parties executed an Advisory Services Agreement[1] (the "Agreement") containing the terms and conditions of the agreements between the parties. **ECF No. 1** at 3. The Agreement was renewed on March 23, 2014, and was set to expire in 2016.

[1] Defendant submitted the Agreement as an attachment to his motion to dismiss. **ECF No. 10-1**. Plaintiff did not object to the authenticity of the document or otherwise oppose its consideration. **ECF No. 11**. The Court finds that the Agreement was fairly incorporated in the allegations of the complaint. In adjudicating a Rule 12(b)(6) motion, a court may consider not only the complaint but also documents that are sufficiently referenced and/or relied upon in the complaint. *See Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

*Id*., at 4. However, plaintiff alleges that he "continued working full time for e-Nabler" after the expiration of the agreement. *Id*. Plaintiff admits he did not execute any other written agreement with defendant. *Id*., at 5. Instead, the parties agreed to "adjust[] the cash portion of the payments…." *Id*. In 2022, defendant "agreed to increase [plaintiff's] commissions." *Id*.

On October 6, 2023, plaintiff announced "he would resign from the company" because defendant did not comply with the compensation agreements to which they had agreed during their commercial relationship extended by verbal agreements. *Id*., at 6. Two weeks later, plaintiff again "gave the [defendant] a final notice" that he would quit if defendant did not pay him. *Id*., at 9. Plaintiff alleges he is owed (i) $115,500 in stock certificates, (ii) $241,500.00 for the purchase price of all stock certificates and stock awards that he is entitled to, (iii) $24,339.18 in sales commissions, including license sales, service, development, and equipment sales commissions, (iv) $1,931.82 for unpaid "salary," (v) $500.00 related to storage fees, (vi) interest, and (vii) costs, fees, expenses and attorney's fees incurred in this litigation. **ECF No. 1** at 9-10.

On November 22, 2024, defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). **ECF No. 10**. Plaintiff filed a response. **ECF No. 11**. Defendant did not move for leave to reply. On September 17, 2025, the Court granted in part and denied in part defendant's motion to dismiss. **ECF No. 12**. Specifically, the Court held that plaintiff's role was that of an administrator under Puerto Rico Act No. 17-1931, P.R. Laws Ann. tit. 29 §§ 171-177 ("Act 17"). Accordingly, claims pursuant to Act 17 failed to state a claim for relief since plaintiff is not a "worker" as defined by that statute. **ECF No. 12** at 8.

On December 26, 2025, defendant filed an answer to the complaint, and a counterclaim based on this Court's diversity jurisdiction, which was the original ground for jurisdiction in this action. **ECF No. 16**. Plaintiff moved to dismiss the counterclaim. **ECF No. 18**. Defendant filed a response, and plaintiff replied. **ECF Nos. 21** and **24**.

## II. Legal standard

When ruling on a motion to dismiss brought pursuant to Fed. R. Civ. P 12(b)(6), courts must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)). "While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action… [and they] must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (cleaned up) (citing, *inter alia*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In order to perform this plausibility inquiry, the Court must "separate factual allegations from conclusory ones and then evaluate whether the factual allegations support a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023) (citing *Iqbal*, 556 U.S. at 678, and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "If the factual allegations in a complaint, stripped of conclusory legal allegations, raise no 'more than a sheer possibility that a defendant has acted unlawfully,' the complaint should be dismissed." *Frith v. Whole Foods Mkt.,*

*Inc.*, 38 F.4th 263, 270 (1st Cir. 2022) (quoting *Rodríguez-Reyes*, 711 F.3d at 53, and *Iqbal*, 556 U.S. at 678). For example, if an "obvious alternative explanation" is supported by the same well-pleaded facts of the complaint, even when seen in the light most favorable to the pleader, then a complaint may very well fail to cross the threshold of plausibility. *Id.*, at 275 (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 9 (1st Cir. 2011)). In sum, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernández*, 640 F.3d at 13.

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) "constitutes a challenge to the federal court's subject-matter jurisdiction…." *Surén-Millán v. United States*, 38 F. Supp. 3d 208, 212 (D.P.R. 2013). The "[p]ertinent inquiry is whether the challenged pleadings set forth allegations sufficient to demonstrate that the subject matter jurisdiction of the Court is proper." *Marrero v. Costco Wholesale Corp.*, 52 F. Supp. 3d 437, 439 (D.P.R. 2014). In so doing, the Court must construe the complaint liberally and treat all well-pleaded facts as true, "according the plaintiff the benefit of all reasonable inferences." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995). Dismissal is only proper if the facts alleged reveal a jurisdictional defect not otherwise remediable. *Sumitomo Real Estate Sales (N.Y.), Inc. v. Quantum Dev. Corp.*, 434 F. Supp. 2d 93, 95 (D.P.R. 2006); *see Colón-Torres v. BBI Hosp. Inc.*, 552 F. Supp. 3d 186, 190 (D.P.R. 2021).

When considering a Rule 12(b)(1) motion to dismiss, the Court may consider all pleadings submitted by the parties. *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996). Thus, the Court "is not restricted to the face of the pleadings but may consider extra-pleading

materials, such as affidavits and testimony to resolve factual disputes concerning the existence of jurisdiction." *Fernández-Molinary v. Industrias la Famosa, Inc.*, 203 F. Supp. 2d 111, 114-15 (D.P.R. 2002) (citing *Land v. Dollar*, 330 U.S. 731, 735 (1947)).

## III. Discussion

### A. The counterclaims

In essence, defendant alleges in its counterclaims that its former advisor and shareholder, Mr. Inan, breached his contractual and fiduciary duties of loyalty, good faith, and non-circumvention. **ECF No. 16**. According to the counterclaim, such violations occurred because plaintiff negatively impacted a highly valuable joint venture opportunity with a third-party company. Among others, defendant alleges that plaintiff issued an ultimatum regarding commissions, terminated his services right before the critical "PAXCON" convention, withheld company promotional materials as leverage, and secretly aligned with the third-party entity in order to obtain benefits from the failed joint venture business. Defendant claims that plaintiff caused the termination of the joint venture negotiations.

Based on these allegations, defendant's counterclaim asserts two causes of action: breach of fiduciary duties and loss of corporate opportunity, and seeks at least $20,000 in out-of-pocket mitigation costs, damages in no less than $6,000,000 for the lost opportunity and diminished enterprise value, and equitable relief to rescind, cancel, or redeem Inan's equity interest in the company. *See* **ECF No. 16.** Plaintiff's motion to dismiss raises several arguments. The Court will address each in turn.

**B. Plaintiff's arguments**

First, plaintiff argues that E-Nabler's counterclaim must be dismissed for lack of subject-matter jurisdiction because the tort-based claims do not share a "common nucleus" of operative fact with his original complaint for unpaid compensation. **ECF No. 18** at 8-12. Defendant pointed out that this argument was misplaced since the counterclaim was filed pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332, not supplemental jurisdiction, 28 U.S.C. § 1367. **ECF No. 21**. In his reply, plaintiff all but concedes that his Fed. R. Civ. P. 12(b)(1) jurisdictional argument was wrong. *See* **ECF No. 24** at 2 (plaintiff "recognizes that a district court has original jurisdiction of all civil actions between citizens of different states….").[2] Thus, the Court need not address plaintiff's admittedly off-mark arguments.

Second, in a very superficial manner, plaintiff asserts that any tort claims brought under Puerto Rico Civil Code Article 1536 are time-barred. **ECF No. 18** at 20. He argues that the tort claims in the counter claim were filed in December 2025, more than a year after defendant discovered its alleged damages in October or November 2023. However, the counterclaim

[2] Plaintiff suggests that this Court can simply eschew its duty to ascertain Article III jurisdiction "because the Counterclaim is independently deficient as a matter of law on substantive grounds." *Id*. Contrary to plaintiff's contention, the Court can only make use of hypothetical jurisdiction if the questions is one of statutory jurisdiction. *See Federated Mut. Ins. Co. v. Peterson's Oil Serv., Inc*., 155 F.4th 1, 6 (1st Cir. 2025) ("when a case poses a question of statutory, not Article III, jurisdiction and when the decision on the merits will favor the party challenging the court's jurisdiction, we may sidestep the jurisdictional determination altogether and resolve the case by asserting hypothetical jurisdiction." (quoting *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 91 F.4th 501, 508 (1st Cir. 2024)(internal quotation marks omitted)). However, as explained before, because plaintiff concedes that his jurisdictional challenge was flawed from the start, the Court need not go further on that topic.

asserts contractual claims, not tort claims—a threshold distinction[3] that was not addressed by plaintiff in his motion to dismiss.[4]

Personal actions for contractual damages under Puerto Rico Civil Code Article 1203, PR Laws Ann. T. 31, § 9495, are subject to a four-year statute of limitations. The counterclaim identifies October 23–24, 2023 (*i.e.* when plaintiff ceased performing his obligations and E-Nabler first discovered his alleged alignment with the third-party entity) as the earliest plausible accrual date for these claims. Counting four years from that date, the limitations period would not expire until, at the latest, October 24, 2027. Thus, E-Nabler's filing of the counterclaim on December 26, 2025, is well within the legal timeframe.

Third, plaintiff contends that the breach of "fiduciary" duty claim fails under Rule 12(b)(6) because he was merely an independent contractor and a minority shareholder who held no corporate office or authority. **ECF No. 18** at 18. Plaintiff is right.

Generally speaking (because the parties have failed to point to authorities readily available in English), a fiduciary duty—derived from the Latin "fidere" or "to trust"[5]—entails a degree of care that is somewhat higher or different than the regular duty not to cause damage

---

[3] *See Ramos Lozada v. Orientalist Rattan Furniture Inc.*, 130 D.P.R. 712, 1992 P.R.-Eng. 755 (June 15, 1992)(explaining that "the task of adequately identifying the type of action involved gains greater importance…" and recognizing that "[s]ometimes the difference between both actions is easily determined, because it suffices to determine the existence of a previous legal relationship.").

[4] Via reply, plaintiff simply states that E-Nabler's claims sound in tort, but he points to no authority supporting that conclusion. Moreover, plaintiff concedes that all of the relevant conduct occurred while his business relationship with E-Nabler and related agreements were in full force and effect. *See* **ECF No. 18** at 3 (pointing to allegations in the counterclaim that place the relevant conduct within the period when the contractual relationship was in force).

[5] *See* https://www.merriam-webster.com/dictionary/fiduciary.

to third parties that is incorporated into Puerto Rico tort law. This duty, however, is commonly imposed by law. In the corporate context, for example, Puerto Rico law establishes that "a fiduciary relation between a director [or officers][6] and the corporation, for which reason said official should not take positions that go against the interests of the corporation." *Epstein v. F. & F. Mortg. Corp.*, 106 D.P.R. 211, 6 P.R. Offic. Trans. 293, 308 (1977).

E-Nabler points to no authority for its claim that plaintiff owed a fiduciary duty to it. On the contrary, in its response to the motion to dismiss, E-Nabler keeps a distance from the term "fiduciary" duty, instead alluding to the more general concepts of loyalty and contractual good faith. In that sense, defendant argues that the plaintiff's narrow focus on the "fiduciary" label is irrelevant because substantive duties of loyalty and good faith attach to all contractual and professional relationships under Puerto Rico law. **ECF No. 21** at 19. Accordingly, the Court understands E-Nabler to have waived/forfeited any claim actionable under a statutory fiduciary duty.

However, E-Nabler's counterclaims are all potentially colorable under contract law and are, thus, not dismissed. The Puerto Rico Civil Code does not contain a laundry list of causes of action available to contracting parties.[7] Instead, it provides for the specific performance or damages "arising from breach of contract…." *Ramos Lozada v. Orientalist Rattan Furniture Inc.*,

---

[6] *See Dennis, Metro Invs. v. City Fed. Savs.*, 121 D.P.R. 197, 21 P.R. Offic. Trans. 186, n. 6 (May 5, 1988).

[7] Plaintiff replies that the factual allegations in the counterclaim "do not satisfy the elements of any cause of action… there is no law providing for the conduct described…." **ECF No. 24** at 3. Ironically, there "is no law" supporting plaintiff's proposition, and—of course—plaintiff cites none. Instead, as explained herein, the Civil Code only establishes a general right to seek redress from a breach of contract. *See* P.R. Laws Ann. T. 31, § 9303.

130 D.P.R. 712, 1992 P.R.-Eng. 755 (June 15, 1992). The "compensation for damages requires an illegal conduct that causes the damage…." such as "having breached the agreements of a contract…." *Id*. Accordingly, courts have generally required three elements for breach of contract claim: "(1) a valid contract; (2) a breach by one of the parties to the contract; and (3) resulting damages." *Yacht Caribe Corp. v. Carver Yacht LLC*, 270 F.Supp.3d 547, 555 (D.P.R. 2017).

Aside from explicit covenants and agreements, Puerto Rico law implies into contracts the covenant of good faith and fair dealing. *See Cantellops v. Álvaro-Chapel*, 234 F.3d 741, 744 (1st Cir. 2000). This duty of good faith applies to contract performance. P.R. Laws Ann. T. 31, § 8983; *see also Adria Int'l Grp., Inc. v. Ferré Dev., Inc.*, 241 F.3d 103, 108–09 (1st Cir. 2001). Courts within this District have explained that:

> Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. It is important to highlight that the concept of 'good faith' creates special conduct responsibilities for each case in accordance with the juridical relationship and the end intended by the parties.

*Punta Lima, LLC v. Punta Lima Dev. Co., LLC,* 440 F. Supp. 3d 130, 154 (D.P.R. 2020)(cleaned up). "In determining whether liability attaches in a particular instance, an inquiring court typically examines the totality of the circumstances" *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 12 (1st Cir. 2002). "[T]he ethical content of each act must be examined in the light of its particular circumstances." *Id*. "Liability exists if, in light of all the surrounding circumstances, the party's actions appear arbitrary, deceitful, or animated by some improper purpose." *Id.*

In its counterclaim, defendant alleges that it executed a memorandum of understanding ("MOU") "in or about December 2022" with a third-party entity and "continued to develop the contemplated transaction during the first half of 2023," with direct communications beginning "in or about August 2023." **ECF No. 16** at 27. It also alleges that "in or about early October 2023," plaintiff began demanding payment of commissions and stopped providing support on that important business transaction. *Id*. More critically, the counterclaim alleges that plaintiff was participating as a member of the MOU counterparty's internal team rather than representing E-Nabler. During a conference call, E-Nabler learned that plaintiff had falsely claimed he fully disclosed his transition and had made disparaging, misleading remarks about E-Nabler's alleged contract failures to justify his new position. As a direct consequence of plaintiff's conflicted alignment and misrepresentations, the third party terminated all joint venture discussions, with E-Nabler. *Id*., at 27-29. The counterclaim also suggests that plaintiff refused to release the promotional materials E-Nabler needed for PAXCON, forcing it to incur approximately $20,000 in mitigation costs. *Id*.

These allegations establish a plausible claim for breach of contract. Thus, plaintiff's motion to dismiss defendant's counterclaims on the grounds that they fail to state a claim for relief pursuant to Fed. R. Civ. 12(b)(6) is **DENIED**.

Fourth, plaintiff argues that the "non-circumvention" clause is an unenforceable post-engagement restrictive covenant lacking adequate consideration, and that a subsequent verbal

agreement to modify his compensation created a new contract that superseded all prior written obligations. The Court disagrees with the argument.

According to the allegations in the counterclaim, which the Court takes at face value, the challenged conduct took place while the service agreement between E-Nabler and plaintiff was still in effect due to the verbal extensions. The allegations further suggest that plaintiff continued to provide professional services under subsequent verbal extensions. These extensions, which were mutually agreed upon, modified only plaintiff's compensation structure. The extensions did not alter plaintiff's core obligations which were in force during the joint venture negotiations in 2022 and 2023. The Court is not evaluating a non-compete agreement in a scenario where the former business partner tries to limit plaintiff's chances of doing business after their business relationship is over. Therefore, at least at this Fed. R. Civ. P. 12(b)(6) stage, plaintiff's argument lacks merit.

Finally, plaintiff asserts that the corporate opportunity doctrine applies exclusively to formal directors and officers, and E-Nabler fails to allege that he actually usurped the joint venture for his own benefit. Thus, plaintiff contends, the business opportunity claim is legally deficient and speculative. As explained before, this argument is unavailing inasmuch as the Puerto Rico Civil Code does not set a fixed menu of redressable wrongs. At the risk of being repetitive, the Civil Code requires that parties to an agreement act with good faith in the performance of their obligations and provides for the right to seek damages and strict performance. *See* P.R. Laws Ann. T. 31, §§ 8983, 9303.

## IV. Conclusion

For the reasons stated above, the motion to dismiss at **ECF No. 18** is **DENIED.**

**SO ORDERED**.

At San Juan, Puerto Rico, on this 18th day of September, 2026.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**